IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHERRELL C. TOWNS, ) | |
| No. B20513, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-cv-01269-MJR |
| ) | |
| C/O DEATHROW, ) | |
| L. MAUE, ) | |
| TRAVIS LINDSEY, ) | |
| C/O TODARO, ) | |
| B. CHANDLER, ) | |
| REBECCA COWAN, ) | |
| BRANDIN ANTHONY, ) | |
| ROY GRATHLER, and ) | |
| LT. MIFFLIN, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff Sherrell C. Towns, an inmate in Menard Correctional Center, brings this action pursuant to 42 U.S.C. § 1983, based on a series of allegedly retaliatory incidents triggered by Plaintiff being refused access to the prison barbershop, culminating in Plaintiff receiving a disciplinary conviction that landed him in segregation.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility. *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

According to the 128-page complaint, on October 23, 2011, C/O Deathrow was making a list of inmates who wanted to be placed on the call line to go to the barbershop. When Deathrow did not specifically ask Plaintiff, Plaintiff took offense. When Plaintiff asked to be

placed on the list, C/O Deathrow told Plaintiff he would not be placed on the list because he did not need a haircut; he still looked like the picture on his identification card.

In response to Plaintiff's request to speak to a supervisor, Sgt. Roy Grathler and C/O L. Maue approached Plaintiff in an "an angry and aggressive" manner (Doc. 1, p. 5). Plaintiff felt that the two officers were questioning him in order to "elicit an ill reaction"—accusing Plaintiff of having giving C/O Deathrow "problems" (Doc. 1, p. 5). Plaintiff asserted that his request for clarification of the haircut policy was not "causing problems", to which Maue responded, "Now see, that right there is what's going to give me and you some problems." (Doc. 1, p. 5). Plaintiff then cut off the conversation (Doc. 1, p. 5). Sgt. Grathler warned, "Say something else about our policy, you're going to seg." (Doc. 1, p. 6). Plaintiff contends Deathrow, Maue and Grathler violated his right under the Illinois Code of Corrections to access the barbershop.

A week later, on October 30, 2011, Plaintiff filed a grievance regarding the barbershop incident and Maue and Grathler's threat of placement in segregation. The next day, "C/O Maue rampaged through 3 gallery … forcefully pounding on the cell bars with a steel rod[1] in a fit of rage creating for a cacophony of extremely loud and nerve wrecking noise. The force applied sent paint chips flying into Towns' assigned cell. Consequently, Towns was struck in the eye by paint chips." (Doc. 1, p. 10 (spelling and grammatical errors in the original)). C/O Maue stated, "I am going to do this every day until they shut the fuck up." (Doc. 1, p. 10).[2] Plaintiff alleges that Maue was acting in retaliation for the October 30 grievance, and in a way designed to intimidate Plaintiff and discourage him from filing grievances. In addition to the

---

[1] Plaintiff explains that banging a steel rod along the cell bars is referred to, in "bureaucratic parlance," as "bar rapping," and is a routine method of rousting inmates as a security check and/or count is performed at each shift change. (*See* Doc. 1, p. 15-16, 37).

[2] Foul language is quoted throughout this Order merely to illustrate precisely what Plaintiff alleges is intimidation.

timing of the bar rap, as evidence of Maue's retaliatory intent and furtherance of a conspiracy with Grathler, Plaintiff notes that Maue was not assigned to gallery 3 and should not have bar rapped, let alone bar rapping an hour ahead of a shift change.

On November 1, 2011, Plaintiff mailed a second grievance to the warden (rather the transmitting the grievance through the internal mail system), alleging that C/O Maue had engaged in retaliatory, threatening bar rapping. On November 6, Plaintiff discovered a note on his bunk, written on paper issued to guards, stating:

> Dearest Shell,
> I am hopeful this finds you well & healthy enough to carry out my recommendation. After a careful & through review of your grievance, the following is my recommendation as per grievance procedure dated 1/79. Be advised that you may kindly fellate yourself. After fellation if you may aslo fornicate with yourself to completion. Stay up.

(Doc. 1-2, p. 45 (grammatical and spelling errors in original)). According to Plaintiff, "the anonymous letter amounted to an intellectual, albeit badly elocuted [sic] invitation for [him] to go fuck himself for the filing of grievances." (Doc. 1, p. 29).

On November 8, C/O Deathrow asked Plaintiff how he had managed to get his grievance through—in effect acknowledging that prison staff tampers with grievances sent through the prison mail system. Deathrow then commented, "Well, I'm the kind of person that gives a person what they got coming." (Doc. 1, p. 30).

Days later, on November 11, 2011, C/O Travis Lindsey bar rapped his way down gallery 3 while Plaintiff was sleeping. Fifteen minutes later, C/O Deathrow appeared and told Plaintiff to pack his property because he was being moved. Deathrow stated that she did not know why, but she speculated that Plaintiff had received a disciplinary ticket. C/O Deathrow, C/O B. Chandler, and another officer cuffed Plaintiff and escorted him from the cell; as they reached the shower area, C/O Maue and C/O Todaro confronted Plaintiff. Maue stated, "I should

fuck you up," "take you into that shower and beat the shit out of you." (Doc. 1, p. 25). Maue continued, "You think you're smart, don't you, using those big words …." "Who are you going to write to when your cellie is fucking you in the ass?" (Doc. 1, p. 25). Todaro and Chandler also commented that Plaintiff was not on deathrow any more, where Plaintiff could get his way. Maue added, "No haircut for you," "when you get out, you're going to have a beard…." (Doc. 1, p. 26). Plaintiff was then escorted to segregation by two other officers, per C/O Maue's "orchestration" (Doc. 1, p. 26).

Plaintiff's placement in segregation was triggered by a November 11, 2011, disciplinary ticket issued by C/O Travis Lindsey, charging Plaintiff with intimidation or threats, and insolence (*see* Doc. 1-2, p. 42). According to the ticket, at the request of C/O Todaro, C/O Lindsey bar rapped gallery 3, causing Plaintiff to comment that he was sick of officers not assigned to the gallery bar rapping, and that he was going to "fuck up" Lindsey because he, Plaintiff, was sick of C/O's doing whatever they wanted. C/O Maue was listed as a witness to the incident. Plaintiff asserts that the ticket was falsified, the product of the continued retaliatory conspiracy involving Deathrow, Maue, Grathler, Chandler, Todaro and Lindsey. As evidence of the falsity and conspiracy, Plaintiff notes that, among other things, the ticket indicates it was written at 7:45 a.m., proving that it was fabricated in advance, because Lindsey did not bar rap until 8:00 a.m. (*see* Doc. 1-2, pp. 33, 42). Furthermore, Plaintiff contends he never spoke with Lindsey.

Plaintiff appeared before the Adjustment Committee for a hearing. The Committee was comprised of Lt. Mifflin, C/O Rebecca Cowan and C/O Brandon Anthony, members of the conspiracy to retaliate against Plaintiff. According to Plaintiff, the Committee was less than impartial. Cowan and Anthony were defendants in a pending lawsuit filed by

Plaintiff. Plaintiff contends the penalties imposed (six months in segregation, a reduction in grade, and loss of commissary and yard privileges) were excessive and intended to be retaliatory and threatening.

Plaintiff alleges that Defendants' retaliation violated his rights under the First and Fourteenth Amendments to the United States Constitution, and that the their "acts and omissions" further violated the Illinois constitution, unspecified state laws and Illinois Department of Corrections' rules (*see* Doc. 1, p. 52).

Based on the allegations in the complaint, the Court finds it convenient to divide the *pro se* action into seven counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:** **On October 23, 2011, Defendants Deathrow, Grathler and Maue denied Plaintiff access to the barbershop, in violation of the Illinois Corrections Code;**
>
> **Count 2:** **On October 31, 2011, Defendant Maue intimidated and threatened Plaintiff in retaliation for Plaintiff's October 30, 2011, grievance, in violation of the First Amendment;**
>
> **Count 3:** **On November 11, 2011, Defendants Maue, Todaro and Chandler intimidated and threatened Plaintiff in retaliation for Plaintiff's grievances, in violation of the First Amendment;**
>
> **Count 4:** **On November 11, 2011, Defendant Lindsey issued Plaintiff a disciplinary ticket in retaliation for Plaintiff's grievances, in violation of the First Amendment;**
>
> **Count 5:** **Defendants Mifflin, Cowan and Anthony conducted a disciplinary hearing, convicted and penalized Plaintiff, all in retaliation for Plaintiff's grievances and his pending law suit, in violation of the First Amendment, and thereby denying him due process as guaranteed by the Fourteenth Amendment;**

> **Count 6:** All Defendants conspired to intimidate and retaliate against Plaintiff, in violation of the First Amendment; and
>
> **Count 7:** The intimidating and retaliatory actions of all Defendants violated the Illinois Constitution, state laws, and Illinois Department of Corrections' rules.

## Discussion

Section 1983 creates a cause of action only where the conduct of a person acting under the color of state law violates a right protected by the United States Constitution or created by federal statute. 42 U.S.C. § 1983. However, where a district court has original jurisdiction over a civil action such as a Section 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho–Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008). Consequently, whether Plaintiff Towns' claims based on state law can be entertained is dependent upon whether he has stated a viable federal claim.

### Counts 2-6

Counts 2-6 all raise First Amendment retaliation claims. To prevail on a First Amendment retaliation claim, a plaintiff must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action. *Gomez v. Randle,* 680 F.3d 859, 866 (7th Cir.2012) (internal citations omitted).

Suing prison officials is protected activity under the First Amendment. *Lewis v. Casey,* 518 U.S. 343, 350 (1996); *Lekas v. Briley,* 405 F.3d 602, 614 (7th Cir.2005). Similarly, retaliation for filing a grievance violates the First Amendment. *Gomez v. Randle,* 680 F.3d 859, 866 (7th Cir.2012). The allegations in the complaint—particularly the chronology and various

comments—sufficiently suggest that Plaintiff's grievances and his lawsuit against Cowan and Anthony could have been a motivating factor in the various actions at issue. Thus, two of the three aspects of pleading a retaliation claim are evident.

Whether Plaintiff suffered a deprivation that would likely deter First Amendment activity in the future gives the Court pause. Plaintiff's focus on the trivial, such as the denial of access to the barbershop and a 15 minute discrepancy in the ticket, and the repetitiveness of the voluminous complaint are all distracting. The complaint initially appears to be frivolous. However, as in *Bridges v. Gilbert*, 557 F.3d 541 (7th Cir.2009), a broader view suggests that this series of allegations, while not actionable individually, reasonably could be found to have been the product of retaliation, making each claim actionable under Section 1983. In *Bridges*, the plaintiff "alleged that he suffered retaliation through delays in his incoming and outgoing mail; harassment by a guard kicking his cell door, turning his cell light off and on, and opening his cell trap and slamming it shut in order to startle him when he was sleeping; unjustified disciplinary charges; and improper dismissal of his grievances." *Bridges*, 557 F.3d at 552. For these reasons, the First Amendment retaliation claims in Counts 2-4 shall proceed. Counts 5 and 6 require further discussion.

Count 6, alleges a conspiracy between all nine defendants to retaliate against Plaintiff. A conspiracy is not an independent basis of liability. *See Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008); *Cefalu v. Vill. of Elk Grove,* 211 F.3d 416, 423 (7th Cir. 2000). To be cognizable under Section 1983, the conspiracy must have resulted in the violation of an inmate's civil rights. S*ee Lewis v. Washington,* 300 F.3d 829, 831 (7th Cir. 2002). Conspiracy liability requires a showing that: (1) the individuals reached an agreement to deprive plaintiff of his constitutional rights; and (2) overt acts in furtherance actually deprived plaintiff of those rights.

*See Scherer v. Balkema,* 840 F.2d 437, 442 (7th Cir.1988). In this instance, the conspiracy was purportedly aimed at retaliating against Plaintiff for filing grievances and a lawsuit, via the overt acts underlying Counts 2-4. Thus, the only remaining question regarding the conspiracy allegation is whether an agreement has been adequately pleaded, as opposed to merely a conclusory assertion.

The conspirators must have shared the same objective (to violate Plaintiff's constitutional rights), and agreed to the general nature and scope of the conspiracy. *See Green v. Benden,* 281 F.3d 661, 665–66 (7th Cir.2002). Circumstantial evidence may be used to prove a conspiracy, but the evidence must not be speculative. *Williams v. Seniff,* 342 F.3d 774, 785 (7th Cir.2003). The circumstantial evidence must be "sufficient to permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Green,* 281 F.3d at 666.

Again, looking at the chain of events and comments described in the complaint, beginning with the triggering event, C/O Deathrow denying Plaintiff access to the barbershop, and leading to C/O Lindsey issuing a disciplinary ticket and Plaintiff being led off to segregation, the notion of a conspiracy cannot be dismissed at this time with respect to Counts 2-4 and Defendants Deathrow, Maue, Lindsey, Todaro, Chandler and Grathler. However, the Adjustment Committee defendants, Mifflin, Cowan and Anthony, named in Count 5 are linked to that conspiratorial group only because the Committee hearing followed in time.

The complaint indicates that Mifflin, Cowan and Anthony were motivated by Plaintiff's pending lawsuit against Cowan and Anthony, not by the grievances that allegedly motivated the other defendants. The joint pursuit of an investigation based on a belief a "suspect" is guilty is not an unlawful conspiracy. *See Reasonover v. St. Louis Cnty., Mo.,* 447

F.3d 569, 582 (8th Cir.2006). Similarly, the fact that Plaintiff was found guilty and punished is not evidence of a conspiracy. The inclusion of Mifflin, Cowan and Anthony in the conspiracy allegation in Count 6 is too speculative to satisfy the *Twombly* pleading threshold. Mifflin, Cowan and Anthony will be dismissed from Count 6 without prejudice.

Count 5, the retaliation and due process claim asserted against Mifflin, Cowan and Anthony, remains. Essentially, Plaintiff is alleging that the Committee's retaliatory motive and prejudice turned it into a "kangaroo court." The First Amendment retaliation claim is essential to triggering due process protections and is thus the lynchpin of Count 5. Typically, *Heck v. Humphrey*, 512 U.S. 477 (1994), would bar Plaintiff's due process claim and any attack that would undermine a standing conviction. *See Black v. Lane*, 22 F.3d 1395, 1403 (7th Cir.1994) (citing *Sprouse v. Babcock*, 870 F.3d 450, 452 (8th Cir.1989)); *see also Moore v. Mahone*, 652 F.3d 722, 723–25 (7th Cir.2011). The fact that two of the three members of the Adjustment Committee were defendants in an ongoing lawsuit filed by Plaintiff presents a sufficient basis for allowing the retaliation aspects of Count 5 to proceed; accordingly the due process claim within Count 5 shall also continue.

**Count 1**

Count 1 alleges that Defendants Deathrow, Grathler and Maue denied Plaintiff access to the barbershop, in violation of the Illinois Corrections Code. Department of Corrections' regulations and the Illinois Unified Code of Corrections were "designed to provide guidance to prison officials in the administration of prisons," not to confer rights on inmates. *Ashley v. Snyder,* 739 N.E.2d 897, 902 (Ill. App. 4th Dist. 2000); *see McNeil v. Carter,* 742 N.E.2d 1277 (Ill.App.3d 2001). Furthermore, as noted in *Ashley*, in *Sandin v. Conner,* 515 U.S. 472, 477–84 (1995), the United States Supreme Court held that states cannot create enforceable

liberty interests in freedom from the routine deprivations and discomforts of prison life. 739 N.E.2d at 900-01. Also, failure of prison officials to follow state rules or administrative regulations does not give rise to a constitutional claim. *Pasiewicz v. Lake Cnty. Forest Preserve Dist.,* 270 F.3d 520, 526 (7th Cir. 2001).

For these reasons, Count 1 shall be dismissed with prejudice for failure to state a claim upon which relief can be granted.

**Count 7**

In Count 7, it is alleged that Defendants' intimidating and retaliatory actions violated the Illinois Constitution, state laws, and Illinois Department of Corrections' rules. As already noted relative to Count 1, Department of Corrections' regulations and the Illinois Unified Code of Corrections do not confer substantive rights. The complaint also fails to state a claim upon which relief can be granted in that it does not otherwise identify any state statutes.

Article I, section 2 of the Illinois constitution corresponds to the Fourteenth Amendment of the federal constitution regarding due process. Section 5 guarantees the right to redress grievances, similar to the First Amendment to the United States Constitution. Therefore, only the aspect of Count 7 asserting that Defendants violated the Illinois constitution shall proceed, insofar as those constitutional provisions correspond with the allegations underlying Counts 2-6.

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 1** is **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that all claims in **COUNT 6** against Defendants **LT. MIFFLIN**, **REBECCA COWAN** and **BRANDON ANTHONY** are **DISMISSED** without prejudice; they otherwise remain as defendants in this action.

**IT IS FURTHER ORDERED** that the claim within **COUNT 7** regarding Illinois Department of Corrections' rules is **DISMISSED** with prejudice, the claim within **COUNT 7** relative to unspecified state laws is **DISMISSED** without prejudice, but the claim within Count 7 pertaining to the Illinois constitution shall **PROCEED**.

**IT IS FURTHER ORDERED** that **COUNTS 2-7** shall **PROCEED**, except as already ordered.

The Clerk of Court shall prepare for Defendants **DEATHROW**, **MAUE**, **LINDSEY**, **TODARO**, **CHANDLER**, **COWAN**, **ANTHONY**, **GRATHLER** and **MIFFLIN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any

documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the

Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 13, 2014**

s/ *Michael J. Reagan*
**MICHAEL J. REAGAN**
**UNITED STATES DISTRICT JUDGE**