IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

SHERRELL TOWNS, #B20513,      )
                                     )
          Plaintiff,            )
                                       )
      -vs-                   )       No. 13-1269
                                       )
C/O DEATHROW, et al.,         )
                                       )
          Defendants.       )

## ANSWER AND AFFIRMATIVE DEFENSES

NOW COME the Defendants, TERRI DETHROW and MICHAEL MIFFLIN, by and through their attorney, Lisa Madigan, Attorney General for the State of Illinois, and for their Answer and Affirmative Defenses to Plaintiff's Complaint (Doc. 1), state as follows:

## IV. STATEMENT[1]

1.      On October 23, 2011, Correctional officer (c/o) Deathrow walked (3) three gallery of the South Lowers cellhouse asking inmates if they would like to be placed on the barbershop list for haircuts where by inmates desiring a haircut would have their named logged by c/o Deathrow and issues a call pass to go to the barbershop for a haircut.

**RESPONSE: Defendant Dethrow lacks independent, current recollection as to whether she walked that cell house, on that date, to prepare a list for the barbershop. Defendant Mifflin lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

---

[1] Defendants have separated the Statement of Claim in Plaintiff's Complaint into separate, numbered paragraphs in order to better respond to Plaintiff's allegations.

2.      Upon reaching Towns' assigned cell (317), c/o Deathrow inquired of Towns' cell mate Maurkeese (sic) #B59750, if he wanted a haircut. Maurkeese replied "yes." C/o Deathrow then looked at the head of Maurkeese and told Maurkeese that he did not need a haircut. Maurkeese asked, "Why?" C/o Deathrow told Maurkeese that he could cut his own hair in the cell and even suggested to Maurkeese that Towns could cut his (Maurkeese) hair for him (Maurkeese) before moving on to the next cell without any consideration as to whether or not Towns desired a haircut.

**RESPONSE: Defendant Dethrow lacks independent, current recollection as to whether she had the above described conversation with Plaintiff. Defendant Dethrow denies she would skip Plaintiff while compiling the barbershop list. Defendant Mifflin lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

3.      At that time, Towns asked c/o Deathrow if she was going to put Towns on the barbershop list for a haircut. C/o Deathrow responded "No." Towns inquired as to "why?" c/o Deathrow told towns that it did not look like Towns needed a haircut and further stated that for as long as Towns looked like his ID card—that is , Towns appeared in person as Towns appears on Towns picture ID – Towns was not allowed to be placed on the barbershop list for haircuts. Upon Towns inquiring as to inquiring as to whether or not Towns has a right to access the barbershop. C/o Deahtrow replied "No" and then Towns she would get the Lieutenant (Lt.) if Towns wanted to speak to the Lt. to which Towns replied "yes."

**RESPONSE: Defendant Dethrow denies she had a conversation with Plaintiff as described above. Defendant Mifflin lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

4.      Shortly thereafter, Sergeant (Sgt.) Roy Grathler (Sgt. Roy) and c/o L. Maue appeared before Towns assigned cell and confronted Towns. Sgt. Roy said c/o L. Maue both had an attitude concerning Towns inquiring about being deprived of the right to have equal access to the barbershop facility.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

5.      The approach and posture of Sgt. Roy and c/o L. Maue toward Towns concerning said inquiries was aggressive and angry: "Are you Town?" Sgt. Roy toned before demanding Towns' ID card. Towns replied "yes" and have his ID card to Sgt. Roy. C/o L. Maue asserted himself in very much the same fashion—aggressive and angry. "Why are you giving Ms. Deathrow problems?" C/o L. Maue chimed in. The following exchange took place between Towns and c/o L. Maue: You call me trying to get clarification about the barbershop policy giving a correctional officer problems?" Towns responded. "Now see, that right there is what's going to give me and you some problems," c/o/ L. Maue retorted before proceeding to interrogate Towns in an effort to elicit an ill reaction or ill response. C/o L. Maue continued: "You keep yourself trimmed up, what you need to go to the barbershop for?" In response, Towns chose to remain silent and told c/o L. Maue, "I have nothing to say." Sgt. Roy interjected, "Well, you're not getting a hair cut." Sgt. Roy said before openly threatening Towns with a disciplinary report (ticket) in

3

regards to further complaints concerning the barbershop policy. Specifically, Sgt. Roy told Towns, "Say something else about our policy, you're going to seg." See, Plaintiff's affidavit, attached as exhibit #(1). This encounter and exchange was witnessed by numerous inmates. One such inmate was John Lee *1 # A-15590 who was housed in the cell next door to Towns at the time was housed in the cell next door to Towns at the time of this encounter and exchange. See, affidavit of John Lee, attached as Exhibit #(2). Another such inmate is Aryules Bivens attached to Exhibit #(3).

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

6.     Here, c/o Deathrow, c/o L. Maue and Sgt. Roy clearly violated Towns' right of access to the barbershop as provided for and protected under Article 7, Illinois Code of Corrections, Provision 5/3-7-2(A). This is so because the right of access to the barbershop is to be afforded every inmate was so desires such access irrespective of race, creed, religion, sexual orientation ext. Furthermore, the right of access to the barbershop is not subject to a correctional officers discretion in terms of whether or not it looks like an inmate needs a haircut anymore than an inmates right of access to the shower facility is to be determined by whether or not a correctional officer thinks an inmate needs a shower.

**RESPONSE: Pursuant to the Court's January 13, 2014 Merit Review, this claim has been dismissed. (Doc. 7 at 12).**

7.     Subsequently, Towns filed a grievance concerning deprivation of the right of access to the barbershop and Towns' encounter with c/o L. Maue and Sgt. Roy.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

**Grievance**

8.      On October 20, 2011, Towns filed a grievance alleging deprivation of the right of access to the barbershop on part of c/o/ Deathrow, c/o L. Maue, and Sgt. Roy. The grievance was dated October 23, 2011. See, Grievance of October 23, 2011, attached as Exhibit #(4).

Contemporaneously, Towns had wrote and mailed a copy of the grievance on October 23, 2011 along with a letter to the director of the Illinois Department of Corrections (IDOC) requesting assistance in getting the grievance processed at the institutional level – that is, the Menard Correctional Center (M.C.C.). This is so because the Menard C.C. customarily does not response to inmate grievances involving staff misconduct. See, grievance of October 23, 2011 and later of October 27, 2011, attached as exhibit #(5).

The director's office ordered the Warden's office to respond to the grievance. (Exh. #(1). Subsequently, the grievance was deemed an emergency (Exh. #14), an thereby the grievance office was ordered to respond to the grievance by assistant Warden Kimberly Butler *2 (Exh #(1). Additionally, the internal affairs division was notifited and proceeded to investigate the allegations of the grievance of October 23, 2011.

On November 7, 2011, Brad Thomas, *3 a lieutenant at the time, issued a report on part of internal affairs. (Exh #(4). Specifically, the internal affairs report denied and excused the alleged misconduct claimed on Towns' grievance by way of cover up. This is

so because the report issued by Brad Thomas denied that Towns was ever confronted by c/o/ Deahtrow, c/o L. Maue, and Sgt. Roy on October 23, 2011. (Exh. #4). Furthermore, the report written by Brad Thomas claimed Towns has been scheduled to go to the barbershop on November 10, 2011 (Exh #(4). As a direct result of the report written by Brad Thomas, Towns' grievance of October 23, 2011 was denied by the grievance officer. (Exh #(4). A timely appeal was filed by Towns concerning denial of the grievance on October 23, 2011. This appeal was mailed to the administrative review board (ARB). (Exh #(4) On My 23, 2012, the grievance on October 23, 2011. Was denied by the ARB. See ARB Report of May 23, 2012 attached as Exhibit #(6).

As such, Towns had exhausted administrative remedies concerning the grievance of October 23, 2011. (Exh #(6).

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

### Claim 1

### Retaliation for Filing of Grievance

9.      On October 30, 2011, Towns placed a grievance in the mail concerning open threats made to Towns by Sgt. Roy and C/O L. Maue involving Towns being denied access to the barbershop on part of Sgt. Roy, C/O L. Maue, and C/O Deathrow. Specifically, Sgt. Roy and C/O L. Maue openly threatened to send Towns to Seg. If Towns complained any further about the barbershop policy. (ExH. #(1-4).

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

6

10.     The very next day, October 31, 2011, approximate time: 2: o'clock p.m., C/O Maue rampaged through 3 gallery of the South Lowers Cell house forcefully, pounding on the cell bars with a steel rod in a fit of rage creating for a cacophony of extremely loud and nerve wrecking noise.   The force applies sent paint chips flying into Towns' assigned cell.   Consequently, Towns was struck in the eye by paint chips. <u>ExH. #(1)</u>.   C/O L. Maue continued down the gallery for a few more cells before returning back down the gallery pounding on the cell bars of the same cells again – for second time. The actions of C/O L. Maue were witnessed by numerous inmates housed on 3 gallery. One such inmate was Edward Mitchell.   <u>See</u>. <u>Affidavit of Edward Mitchell attached as Exhibit #(7)</u>.   Also, <u>see</u> <u>(Ex.H #(1-3)</u>.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

11.     Furthermore, the actions of C/O L. Maue came to the attention of the correctional officer in the gun tower (Tower Office).

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

12.     The tower officer inquired as to what C/O L. Maue was so upset about. C/O L. Maue responded, "I am going to do this everyday until they shut the fuck up." <u>ExH. #(1-3, 7)</u>.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

13.     Here, Towns contends that the actions of C/O L. Maue were retaliatory against Towns for the filing of a grievance against C/O L. Maue, C/O Deathrow, and Sgt. Roy the day before on October 30, 2011.   Specifically, the actions of C/O L.   Maue not only bespeaks to the attitude, mentality and state of mind of C/O L. Maue but corresponds to open threats made to Towns on part of C/O L. Maue and Sgt. Roy with openly threaten-ed Towns with retaliatory action in an effort to not only intimidate but to discourage and dissuade Towns from further complaining about the barbershop policy. Ex.H #(1-4). Furthermore, Towns would contend that the totality of facts and circumstances surrounding the actions of C/O L. Maue not only suggest that the actions of C/O L. Maue were retaliatory but supports Towns' claim of retaliation on part of C/O L. Maue and Sgt. Roy. First and foremost, Towns would submit that where the pen is herald to be mightier than the sword.   Towns contends that the filing of a grievance is not only an extension of Towns' voice but would further contend that Towns' grievance of October 23, 2011, which was filed on October 30, 2011, concerning the barbershop policy is as official as it gets in terms of Towns defying the wishes of C/O L. Maue and Sgt. Roy for Towns to stop complaining about the barbershop. ExH # (1-4).   As such, it does not get any simpler than Towns being openly threatened with retaliation in the event that Towns complained again concerning the barbershop policy ExH #(1-4) when _____ by the actions of C/O L. Maue the day after Towns voiced yet another complaint in the form of a grievance concerning the very barbershop policy Towns was openly threaten with retaliation to stop complaining about (ExH #(1-4).   However, these assertions are but a

small representation of the facts and circumstances as they relate to the actions of C/O L. Maue being retaliatory.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

14.     Secondly, Towns has been incarcerated 20 years and would submit that it is general practice for Correctional officers to pound the cellbars with the steel rod (bar rap) at the beginning of a shift change which Towns would contend is just as important to the safety and security of the prison as a head count of each inmate at the beginning of each shift no matter the shift. Here, Towns submits that the incident of bar rapping involving C/O L. Maue occurred at approximately 2: o'clock p.m. during the 7-3 shift which is one hour before the 7-3 shift worked by C/O L. Maue was to end. (ExH #(1-4, 7).   This is significant for a number of reasons given that the chronology of these events in conjunction with the timing facts and circumstances surrounding the actions of C/O L. Maue was to end. (ExH #1-4, 7).   This is significant for a number of reasons given that the chronology of these events in conjunction with the timing, facts and circumstances surrounding the actions of C/O L. Maue and add up to one reasonably deductive conclusion-retaliation.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

15.     In this light, Towns would submit that on October 23, 2011, Sgt. Roy and C/O L. Maue openly threaten Towns with retaliation should Towns complain any further concerning the barbershop policy. (Ex.H #(1-4).

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

16.     Between the dates of October 23, 2011 and October 30, 2011 C/O L. Maue did not bar rap 3 gallery once. <u>(ExH #(1)</u>.    Moreover, Towns would submit that Towns had been housed on 3 gallery for approximately 1 year.    During this period, C/O L. Maue had never bar rapped the cell bars on 3 gallery and the date of October 30, 2011 <u>(ExH. #(1)</u>.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

17.     Yet, on October 30, 2011, Towns filed a grievance concerning the barbershop policy-against the wishes of C/O L. Maue and Sgt. Roy who openly threatened Towns with retaliation should Towns complain any further about the barbershop policy. <u>ExH #(1-4)</u>.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

18.     The very next day, on October 31, 2011, approximately 2: o'clock p.m. chose to bar rap the cell bars on 3 gallery particularly during an hour of the 7-3 shift where in correctional officers assigned to work the 7-3 shift begins the process of transitioning until shift change.    Here, Towns would point out that it is so uncommon and out of the ordinary for a correctional officer to bar rap the cell bars at 2: o'clock p.m. that Towns has never witnessed it done in 20 years of incarceration, except perhaps during some emergency situation or training exercise, ect. <u>(ExH #(1)</u>.    The most interesting factor

10

about the actions of C/O L. Maue is that C/O L. Maue was assigned to work 1 gallery on October 31, 2011 but instead of bar rapping the cell bars on the gallery to which C/O L. Maue was assigned, C/O L. Maue chose to bar rap the cell bars in 3 gallery which Towns contends bespeaks to the deliberateness of the actions of C/O L. Maue.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

19.     This is so because correctional officers assigned to bar rap the cell bars of a particular gallery have a duty to bar rap the cell bars of every single cell of that particular gallery – not just a select handful of cells on that particular gallery as was the case with C/O L. Maue (ExH #(1-3, 7).   Towns submits that the purpose of bar rapping the cell bars is to be certain that the safety and security of the prison is sound in the same sense that a head count of each inmate at the start of each shift is to be certain that no inmates have escaped-bar rapping is to be certain that no inmates have attempted to escape.   As such, a correctional officer who fails to bar rap the cell bars of each cell on a particular gallery is either derelict of duty or operating a hidden agenda. Here, Towns submits that the reason C/O L. Maue was working a hidden agenda rather than derelict of duty concerning bar rapping the cell bars is because not only did C/O L. Maue bar rap only a select handful of cells on October 31, 2011, but C/O L. Maue doubled down when he chose to bar rap the same select handful of cells twice. ExH, #(1-3, 7, 8).   Furthermore, Towns would submit that the actions of C/O L. Maue were not only purposeful within the contact of a hidden agenda but personal rather than official because to double down on a select handful of cells as was done by C/O L. Maue serves no legitimate penological

interest other than to annoy, harass, or in the case of C/O L. Maue-attempt to intimidate inmates. (ExH #(8).   This is so mainly because the purpose of bar rapping the cell bars of any particular gallery is generally satisfied by a correctional officer doing so once. Moreover, even if a correctional officer registered concerns about one cell in particular there would be no justification to bar rap the cell bars of all other cells on that particular gallery.   Furthermore, C/O L. Maue did not mince words when C/O L. Maue told the gun tower officer that "I'm going to do this every day until they shut the fuck up." (ExH #(1-3, 7, 8).   These remarks were made by C/O L. Maue in response to the gun tower officer inquiring as to what C/O L. Maue was so upset about in reference to the crazed and psychotic manner in which C/O L. Maue was beating on the cell bars. (ExH. #(1-3, 7, 8). Towns would contend here that the remarks C/O L. Maue made to the gun tower officer lay bear the attitude, mentality, and state of mind of C/O L. Maue and serves as direct evidence in the form of a confession that the actions of C/O L. Maue on October 31, 2013 were not related to a legitimate penological interest but rather motivated by personal animus and hostility intended to harass, intimidate and threaten Towns.   Thus, the chronology and timing of these events in conjunction with the totality of facts and circumstances surrounding the actions of C/O L. Maue demonstrates in meticulous fashion that C/O L. Maue did retaliate against Towns for the filing of a grievance in that Towns was deprived of the right of access to the barbershop. (Ex.H #(1-4)

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

20.    [U]pon complaining about deprivation of the right of access to the barbershop, Towns was confronted and openly threatened with retaliation on part of Sgt. Roy and C/O L. Maue in the event that Towns complained any further concerning the barbershop policy. (ExH #(1-4).   Towns complained again against the wishes of Sgt. Roy and C/O L. Maue in the form of a grievance. (Ex.H #(4-5).

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

21.    The very next day, C/O L. Maue set about pounding on the cell bars of Towns' assigned cell-not once but twice, causing Towns to be struck in the eye with paint chips. ExH #(1-3, 7, 8).

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

22.    These actions have been meticulously broken down to demonstrate no logical nor reasonable connection to a legitimate penological interest with the smoking gun being C/O L. Maue's own words to the gun tower officer that "I'm going to do this every day until they shut the fuck up." (ExH #1-3, 7, 8).   Furthermore, Towns submits that of the select handful of cells targeted by C/O L. Maue, Towns was the intended target because of these select handful of cells Towns was the only inmate openly threatened with retaliation by C/O L. Maue and Sgt. Roy in the event that Towns complained again. (ExH #1-4).   Towns did complain again. (ExH #(1-4) C/O L. Maue not only responded with angry force by pounding on Town's cell bars but C/O L. Maue's words to the gun tower officer makes it clear that there was a correlation between the grievance filed by

Towns and C/O L. Maue pounding on the cell bars. (ExH #(1-3, 7).   The actions of C/O L. Maue could not have been intended for any other inmate within the select handful of cells besides Towns when considering that Towns was the inmate threatened and Towns was the inmate who filed the grievance. (ExH. #(1-4).   Furthermore, the purpose of Towns being threatened with retaliation was for Towns to shut up and stop complaining. (ExH, #(1-4).   C/O L. Maue told the gun tower officer that the reason he was pounding on the cell bars was to force someone to shut up.   (ExH # (1-4, 7).   The only inmate who filed a grievance concerning C/O L. Maue was Towns. (ExH #(1-4, 7).   This was clearly retaliation on part of C/O L. Maue against Towns for the filing of a grievance after Towns was openly threaten with retaliation in the event that Towns complained about the barbershop policy again.   ExH #(1-4).

   **RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

   **Grievance**

   23.   On October 31, 2011, Towns filed a grievance alleging retaliation on part of C/O L. Maue.   Specifically, Towns alleged that C/O L. Maue targeted Towns' assigned cell where C/O L. Maue used a steel rod to repetitiously pound on the cell bars of Towns' assigned cell during a fit of anger and rage in an effort to intimidate and threaten Towns. See Grievance of October 31, 2011 attached as Exhibit #(8).   Towns alleged the actions of C/O L. Maue caused paint chips to fly into Towns' assigned cell by which Towns was struck in the eyes by the paint ships. (ExH #(8).   Towns alleged that the actions of C/O L. Maue were retaliatory for a number of reasons-the most glaring reason being the filing of

14

the grievance of October 23, 2011, which was actually mailed on October 30, 2011. (ExH. #(8). Towns alleged that the grievance of October 30, 2011 was intercepted by correctional officers of the South Towers cell house which prompt the next day retaliatory actions on part C/O L. Maue. (Ex.H #(8). Towns alleged that the actions of C/O L. Maue were personal and not related to a legitimate penological interest by virtue of the facts and circumstances and the timing of the actions taken by C/O L. Maue as well as by C/O L. Maue's oral admissions to the gun tower officer. ExH #(8).

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the contents of Plaintiff's grievance.**

24. Contemporaneously, Towns hand wrote and mailed a copy of the grievance of October 31, 2011, along with a letter to the director of the Illinois Department of Corrections (IDOC) requesting assistance in getting the grievance processed at the institutional level (m.c.c.) ExH #(8) this is so because the M.C.C. customarily does not respond to inmate grievances involving staff misconduct. (ExH #(8). Towns' efforts to obtain assistance from the office of the director in this instance is consistent and similar to actions taken by Towns concerning the grievance of October 23, 2011. (ExH (#5).

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

25. On November 1, 2011, Towns mailed the grievance to the Warden's office. The warden's office failed to respond. (ExH #(1). This, Towns has exhausted administrative remedies concerning the grievance of October 31, 2011. That being case, Towns would submit that a later grievance was filed on December 18, 2011, in

15

which the allegations written out in the grievance of October 31, 2011 were included. See, Grievance of December 18, 2011 attached is Exhibit #(9). Ultimately, the grievance of December 18, 2011, was denied by A.R.B. see Administrative Review Board Report of July 17, 2013 attached as Exhibit #(10). As such, Towns has exhausted administrative remedies concerning allegations contained in the grievance of October 31, 2011. (ExH #(10).

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

**Claim II**

**Conspiracy To Retaliate Through The Filing of False Disciplinary Charges**

**For the Filing of Grievance**

26.     On November 11, 2011, at approximately 8: o'clock a.m. during the 7-3 shift, C/O Travis Lindsey walked down 3 gallery banging on the cell bars with a steel rod. At the time, Towns was asleep.   Approximately 15 minutes later, C/O Deathrow appeared before Towns' assigned cell whereby Towns was told to pack his property because Towns was being moved.   The following exchange took place between Towns and C/O Deathrow:   "Where I'm going?"   Towns inquired.   "I don't know" C/O Deathrow responded.   "I guess you got a ticket last night or something."   "A ticket" Towns queried. "I was told to tell you to pack it up." C/O Deathrow responded.

**RESPONSE: Defendant Dethrow lacks knowledge or information sufficient to form a belief as to whether she had a conversation with Plaintiff as described**

16

**above. Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's remaining allegations in this paragraph.**

27.      Shortly thereafter, C/O Deathrow, C/O Clover, and C/O B. Chandler appeared before Towns' assigned cell.  Towns was handcuff by C/O Chandler and escorted by C/O Chandler to an area downstairs near the shower.  Towns was immediately approached and surrounded by C/O L. Maue, C/O Todaro, and C/O Chandler at which point C/O L. Maue initiated a verbal assault against Towns involving threats of physical abuse in an effort to intimidate Towns concerning Towns filing of grievances.  Specifically, C/O L. Maue told Towns, "I should fuck you up.  You're little but I'll still take these handcuffs off you and take you into that shower and beat the shit out of you-you think you're smart don't you, using those big words but what good is being smart in jail going to get you. Huh?   Who are you going to write to when your cellie is fucking you in the ass?   How did you survive all these years?   Uh, I know.   You were on deathrow you're a killer." At this point, C/O Todaro told Towns "youre not on deathrow anymore."   C/O Chandler chimed in, "you're not on deathrow anymore Towns.   You better get used to it. You're not going to get what you want." "No haircut for you" C/O Maue said.   "When you get out (of segregation), you're going to have a beard.   You're not even going to get a razor back there." C/O Todaro then told C/O Chandler and C/O maue that C/O clover and Lt.   Walker was going to escort Towns to segregation so that they "would have nothing to do with nothing."   Todar said, gestering as washing his hands and as though having orchestrated the entire _____ Towns was being subjected to.

17

**RESPONSE: Defendant Dethrow denies she was present for a conversation with Plaintiff as described above. Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's remaining allegations in this paragraph.**

28.     At that point, C/O Clover snatched the lay down bag (sheets, pillow case, ect.) from Towns and tossed it on to the floor stating, "He aint carrying shit."   C/O Clover went on to state, "What was that you said about bar rapping" *4 is C/O Clover and Lt. Walker escorted Towns from the South Tower cell house in route to segregation.   These events were memorialized in a grievance filed by Towns on December 18, 2011. <u>ExH #(9)</u>.   Also <u>see (ExH #(1)</u>.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

29.     Prior to Towns being escorted from the South Towers cellhouse to segregation, C/O Todaro call attend to segregation and spoke to another prison official. During the telephone exchange, Todaro stating in reference to Towns that "I've got one coming to you but I need to talk to you about this one." <u>ExH (#1)</u>.

**RESPONSE: Defendant Dethrow lacks knowledge or information sufficient to form a belief as to whether she had a conversation with Plaintiff as described above. Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's remaining allegations in this paragraph.**

30.     On the evening of November 11, 2011, during the 3-11 shift, Towns was served a disciplinary report charging Towns with intimidation or threat and insolence

written by C/O Lindsey. Specifically, the disciplinary report written by _____ *** the term bar rapping is bureaucratic parlance used to define the practice of correctional officers pounding on the cell bars with the steel rod. C/O Lindsay states as follows: "On the above date and approximate time this C/O was rapping 3 gal. per acting Sgt. Tordaro. Upon arriving cell SL 317 inmate Towns B-20513 asked the C/O why the fuck are you bar rapping this gallery when this C/O is not the gallery C/O. This C/O explained to inmate Towns you don't have to be assigned to a gallery to bar rap. Inmate Towns told this C/O that he is tried of this shit that the next C/O that bar raps this gallery that is not assigned that he is going to fuck that individual up that he is tired of C/O's doing whatever the fuck they want. This C/O ask I/M for his ID card. The C/O notified the cell house Lt. Walker of the situation. <u>See</u>. <u>Disciplinary report of November 11, 2011 attached as Exhibit #11)</u>.

**RESPONSE: Defendants admit.**

31. Towns contends that the chronology, sequence, and timing of the events which culminated in Towns being written a falsified disciplinary report by C/O Lindsey in conjunction with the totality of the facts and circumstances surrounding the actions of C/O Maue, C/O Deathrow, Sgt. Roy, C/O Chandler, C/O Tordaro, and C/O Lindsey not only suggest but supports Towns' claim that each of these correctional officers conspired to frame Towns with a false disciplinary report in retaliation for the filing of grievances.

**RESPONSE: Defendants deny the allegations in this paragraph.**

32. Here, Towns would first submit that following the filing of grievances on October 30, 2011 and on October 31, 2011, Towns returned from chow on or about

19

November 6, 2011 to find anonymously written letter laying on Towns' bed. ExH #(1,8). The letter was written on correctional officer issued paper. See, anonymous letter attached as Exhibit #(12). The anonymous letter was not only a direct response to grievances filed by Towns but the anonymous letter amounted to an intellectual albeit badly elocuted invitation for Towns to go fuck himself for the filing of these grievances. (Ex.H #(12).

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

33.     Secondly, on or about November 8, 2011, C/O Deathrow confronted Towns at Towns' assigned cell concerning Towns having filed a grievance about the barbershop policy. (ExH #(1-9).    Specifically, C/O Deathrow asked Towns if Towns was the individual who had filed the grievance concerning the barbershop policy to which Towns responded "yes." (ExH. #(1-9).    The following exchange took place between C/O Deathrow and Towns: "How did you get it out" C/O Deathrow asked, concerning how Towns managed to get a grievance processed. "Through the mail" Towns responded. C/O Deathrow told Towns that she "couldn't believe it" because C/O Deathrow did not think "it was that big of a deal" at which point Towns told C/O Deathrow that, "I don't think its appropriate to discuss my filing of a grievance with you." C/O Deathrow responded by telling Towns, "well, I'm the kind of person that gives a person what they got coming "before leaving Towns' assigned cell. (ExH #(1-9). The exchange between C/O Deathrow and Towns clearly demonstrates that C/O Deathrow was angry about the grievance filed by Towns concerning the barbershop policy.   This exchange further reveals that the

South Lowers Prison staff actively engage in the illicit practice of mail tampering in that inmate grievances were actually being intercepted and curtailed in a deliberate effort to undermine and nullify the inmate grievance process. Thus, lending credence to Towns' claim of retaliation as to <u>Claim I</u> and <u>Claim II</u>.

**RESPONSE: Defendant Dethrow denies she had a conversation with Plaintiff as described above. Defendants deny interfering with the offender grievance process. Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's remaining allegations in this paragraph.**

34.     Towns' claim of retaliation as to <u>Claim I</u> involve-as an element of Towns's claim of retaliation, the filing of a grievance by Towns on October 30, 2011. <u>(ExH #(4)</u> which Towns contends was intercepted.  <u>(ExH #(1)</u> and which resulted in Towns being targeted for retaliation by C/O Maue on the very next day, October 31, 2011. <u>(ExH #1-3, 8, 9)</u>. Significant in part and substantiated in part because the grievance of October 30, 2011 <u>(ExH #(4)</u> filed by Towns to be processed through normal facility channels was never processed through normal facility channels but rather ordered processed by the office of the director of the Illinois Department of Corrections. <u>(ExH #1,5)</u>.  Thus, the grievance of October 30, 2011 <u>(ExH #(4)</u> actually disappeared when submitted by mail to be processed through normal facility channels. <u>(ExH #(1)</u>. As to <u>Claim II</u>, the grievance of October 31, 2011 <u>(ExH #(8)</u> filed by Towns was placed in the United States mail to be processed through normal facility channels was never responded to and actually disappeared also <u>(ExH #(1)</u>.  Thus, the disappearance of both grievances <u>(ExH #(4, 8)</u> tends to serve as an indicator as to what C/O Deathrow meant when she expressed

shock not only at the fact of Towns having filed the grievance but surprise at the fact that the grievance filed by Towns actually got through to initiate the administrative exhaustion process as C/O Deathrow words of "How did you get it out" concerning Towns' grievance of October 30, 2011 were very telling. (ExH #(1-9).  As such, as an element of Towns claim as to <u>Claim I</u> and <u>Claim II</u>.  Towns contends that the  South Lower Prison staff intercepted Towns grievances <u>(ExH #(4-8)</u> and thereby conspiring to retaliate against Towns for the filing of both grievances. <u>(ExH #(4-8)</u>.   In fact, Towns contends that C/O Deathrow words of being the "kind of person that gives a person what they got coming" <u>(ExH #(1,9)</u> was an indirect threat to retaliate against Towns for having filed the grievance and a threat which came to bear fruit on November 11, 2011 when C/O Deathrow informed Towns to pack his property and Towns was escorted to segregation after being written a false disciplinary report by C/O Lindsey <u>(ExH #1,9,11)</u>.   In this light, Towns contend that the disciplinary report written by C/O Lindsay was falsified in conspiracy to retaliate against Towns for the filing of grievances. <u>(ExH #(9)</u>.

**RESPONSE: Defendant Dethrow denies she threatened Plaintiff or had a conversation about grievances. Defendant Dethrow lacks knowledge or information sufficient to form a belief as to whether she had a conversation with Plaintiff about packing up his cell. Defendants deny interfering with the offender grievance process or retaliating against Plaintiff in any way. Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's remaining allegations in this paragraph.**

35.     First and foremost, Towns submits that no such confrontation or exchange of any kind ever took place between Towns and Lindsey on the morning of November 11, 2011. (ExH (1-3, 7, 9)   Thus, the disciplinary report (ExH #(11) written by C/O Lindsey was a complete fabrication. (ExH #(1-3, 7, 9). Secondly, Towns submits that the disciplinary report (ExH #(11) written by C/O Lindsey is timed as having occurred at 7:40 a.m.   Towns contends that this is a complete lie because it was not until approximately 8:00 a.m. or sometime thereafter that Lindsey actually bar rapped the cell bars on 3 gallery (ExH #(1-3, 7, 9) Thus, the disciplinary report (ExH #(11) written by C/O Lindsey was actually written in advance of C/O Lindsey actually bar rapping the cell bars on the morning of November 11, 2011 (ExH. #(1-3, 7, 9, 11) which Towns contends lends demonstrative support to Towns claims that the decision to frame Towns was preplanned in conspiracy to retaliate against   Towns for the filing of grievances. Thirdly, the disciplinary report written by C/O Lindsey concerns Towns allegedly being upset about C/O Lindsey bar rapping the cell bars on 3 gallery. (ExH. #(11) The fallacy of the disciplinary report written by C/O Lindsey is inherent within the disciplinary report itself. Towns would submit that the notion of Towns being upset about C/O Lindsey bar rapping the cell bars on 3 gallery on the basis of C/O Lindsey being unassigned to 3 gallery is simply asinine, illogical, and ludicrous, mainly because the affects of pounding on the cell bars will be no less annoying, cacophonous, dissonant or disturbing regardless as to where the correctional officer pounding on the cell bars is assigned to that particular gallery or not.   This entire premise is preposterous. Furthermore, the disciplinary report written by C/O Lindsey portrays Towns as being under the impression that each gallery is

only to be bar rapped by the correctional officer assigned to that particular gallery.   This a false notion and equally preposterous in that it goes against 20 years of experience on part of Towns who would submit that it is totally absurd on part of C/O Lindsey to suggest that Towns is unaware that a correctional officer does not have to be assigned to a particular gallery or to suggest that Towns somehow takes to heart the issue of a certain correctional officer pounding on the cell bars.   Moreover, Towns has been incarcerated 20 years and not ever has Towns ever had an incident nor so much as filed a grievance concerning a correctional officer pounding on the cell bars in 20 years until maliciously done so by C/O Maue in an effort to intimidate and threaten Towns (ExH. #(1-3, 7-9) There is absolutely no reason to believe that the issue of correctional officers pounding on the cell bars is all of a sudden an issue for Towns new after it has never been an issue for Towns at any point in time for 20 years despite having seen it done nearly every day for 20 years. (ExH #(1, 9). Furthermore, another factor exposing the fallacy of the disciplinary report written by C/O Lindsay is the fact that the disciplinary report (ExH #(11) written by C/O Lindsey quotes Towns as having used the term "bar rapping" in reference to C/O Lindsey pounding on the cell bars.   This is an absolute fabrication on part of C/O Lindsey in that the term "Bar Rapping" is bureaucratic parlance (ExH (4), pg. (28) that Towns had never heard used until served with the disciplinary report written by C/O Lindsey. (ExH #(1,9)   In fact, the grievance written by Towns concerning the issue of "bar rapping" described "Bar rapping" is "pounding on the cell bars" and "banging on the cell bars." (ExH. #(8). Additionally, another factor inherent in the disciplinary report written by C/O Lindsey which exposes the fallacy of the disciplinary report written by C/O Lindsey as part

of a conspiracy to frame Towns in retaliation for the filing of grievances is the fact that C/O Lindsey chose to frame Towns in connection with an issue on which Towns had filed a grievance against Towns with disciplinary action. (ExH #(1-4, 8-9) Towns contends that C/O Lindsey merely served as a vehicle to aid and abet C/O Maue in   making good on threats to retaliate against Towns through the filing of bogus, false and trumped up disciplinary charges.

**RESPONSE: Defendants deny conspiring to retaliate against Plaintiff. Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's remaining allegations in this paragraph.**

36.     The facts are such that Towns was denied the right of access to the barbershop by C/O Deathrow.   Upon complaint, C/O Deathrow dispatched C/O Maue and Sgt. Roy to Towns' assigned cell. Towns was threaten with segregation if Towns complained about the barbershop policy again. (ExH #1-3).   Specifically, Towns was told "say something else about our barbershop policy, you're going to seg." (ExH #1-3) Such a threat is self explanatory given that it would be illegal and unfounded to send Towns to segregation for complaining.   Thus, such a threat could only have one meaning which is that C/O Maue and Sgt. Roy intended to trump up charges against Towns for complaining any further about the barbershop policy.

**RESPONSE: Defendant Dethrow denies interfering with Plaintiff's access to the barbershop and dispatching other officers to Plaintiff's cell. Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's remaining allegations in this paragraph.**

37.     On October 30, 2011, Towns complained about the barbershop policy again in the form of a grievance against C/O Deathrow, C/O Maue and Sgt. Roy. (ExH #(4-5).   The grievance was intercepted.   (ExH #(1-9)

**RESPONSE: Defendants deny interfering with Plaintiff's grievances. Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's remaining allegations in this paragraph.**

38.     The next day, on October 31, 2011, C/O Maue used a steel rod to pound on the cell bars of Towns' assigned cell in an effort to warn, intimidate, and threaten Towns to "stop complaining as evidenced by C/O Maue's own words to the gun tower officer that he is "going to do this every day until they shut the fuck up." (ExH. #(1-3, 7-9)

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

39.     On or about November 6, 2011, correctional officers left an anonymous letter in Towns assigned cell in an effort to discourage, dissuade, harass, and intimidate Towns concerning the filing of grievances (ExH. #(1-3, 7, 9, 12).

**RESPONSE: Defendants deny involvement in leaving an anonymous letter for Plaintiff. To the extent no involvement of Defendants Dethrow and Mifflin is alleged, Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

40.     On or about November 8, 2011, Towns was confronted by C/O Deathrow at Towns' assigned cell where C/O Deathrow express anger at Towns and threaten to give Towns what he "got coming" concerning the filing of grievances. (ExH. #(1, 9)

**RESPONSE: Defendant Dethrow denies the allegations in this paragraph. Defendant Mifflin lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's remaining allegations in this paragraph.**

41.     [O]n November 10, 2011, the internal affairs division conducted, concluded, and issued an investigation report concerning grievances filed by Towns involving C/O Deathrow, C/O Maue, and Sgt. Roy (ExH #(4)

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's remaining allegations in this paragraph.**

42.     The next day, on November 11, 2011, Towns was removed from general population to segregation on trump up charges in connection with an issue Towns had previously complained about in a grievance against C/O Maue.   Specifically, C/O Maue banging on the cell bars, (ExH #8)

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

43.     Towns contends that the issue of "bar rapping" presented in the disciplinary report by C/O Lindsey is but an exploitation of the issue presented by Towns in a grievance Towns filed against C/O Maue.   Specifically, the grievance of October 31, 2011 (ExH #(8) filed by Towns presented the fact of C/O Maue banging on the cell bars for reasons that were personal rather than related to a legitimate penological interest. (ExH #(8)   One aspect of this claim concerned the fact that C/O Maue who was assigned to 1 gallery at the time chose to bar rap 3 gallery at 2: o'clock p.m. in the evening at a time when the 7-3 shift begins to transition unto shift change despite the fact that the

correctional officer assigned to 3 gallery as the time had already done so on the morning of October 31, 2011.  (ExH #(8).   The disciplinary report, written by C/O Lindsey clearly adopted the aspect of the grievance written by Towns in an arrogant attempt to send a message of consequence for the grievances Towns filed against C/O Maue which explains why C/O Maue is listed as a witness on the disciplinary report (ExH #(11) to ensure the trumped up charges would stick in keeping with open threats C/O Maue and Sgt. Roy made to send Towns to segregation for complaining about the barbershop policy.  ExH. #(1-4)

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

44.    Thus, culminating in a plan that came together especially in light of the fact that Towns had been abused in the South Lower cell house for nearly two years without incident yet Towns ended up in segregation inside a virtual week upon filing grievances against correctional officers who openly threatened to send Towns to segregation for complaining.  (ExH. #(1-4, 8-9)   In fact, C/O Maue, C/O Chandler and C/O Todaro confirmed the reason Towns had been framed with a false disciplinary report once Towns had been isolated and surrounded near the downstairs shower where Towns was scolded for filing grievances.  (ExH. #(1, 9)   Specifically, C/O Maue told Towns "…you think you're smart don't you, using those big words…who are you going to write to when your cellie is fucking you in the ass…no haircut for you when you get out [of segregation] you're going to have a beard, you're not even going to get a razor back there." (ExH. #(1, 7)   These remarks make it clear that C/O Maue was referring to the grievances filed by

Towns concerning the barbershop. Furthermore, these remarks by C/O Maue and by C/O Chandler and C/O Todaro were not only retaliatory against Towns for the filing of grievances concerning the barbershop but vindictive in a way to ensure that Towns would not ultimately receive access to the barbershop at no point in time on their watch. This is so because according to the report issued by internal affairs investigate Brad Thomas, Towns was supposed to have been schedule for the barbershop on November 10, 2011. (ExH. #(4)  Apparently, C/O Maue, C/O Todaro, and C/O Chandler conspired to prevent Towns from accessing the barbershop on November 10, 2011 and further conspired to cover it up to prevent Towns from filing more grievances about being denied access to the barbershop on November 11, 2011 by conspiring to send Towns to segregation early morning the next day, November 11, 2011. This makes perfect sense in that upon Towns learning that Towns was supposed to receive access to the barbershop on November 10, 2011 by way of the grievance officers response to Towns grievance (ExH. #(4)  C/O Maue, C/O Todaro and C/O Chandler would have been exposed for depriving Towns of access to the barbershop in the event Towns had filed another grievance about not going to the barbershop on November 10, 2011. It is clear that C/O Maue, C/O Todaro, C/O Chandler was upset that Towns had prevailed concerning access to the barbershop where these correctional officers had previously sought to deny Towns such access as evidenced by C/O Chandler and Todaro's own words that "you're not on deathrow anymore Towns, you better get used to it. You're not going to get what you want." (ExH. #(1, 9)  The facts are such that Towns filed a grievance to gain equal access to the barbershop. (ExH. #(4) Towns prevailed on the grievance. (ExH. #(4)

29

Therefore, C/O Chandler and C/O Todaro along with C/O Lindsey in cahoot with C/O Maue conspired to keep Towns from getting what Towns wanted by framing Towns with a false disciplinary report and sending Towns to segregation to make sure Towns did not get what Towns wanted. (ExH #(1-4, 7, 9, 11)

**RESPONSE: Defendants deny intentionally interfering with Plaintiff's access to a hair cut and conspiring to retaliate against Plaintiff. Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's remaining allegations in this paragraph.**

45.     Additionally, Towns would submit that the instances of C/O Maue, C/O Chandler, C/O Todaro, C/O Clover, C/O Deathrow, and Sgt. Roy conspiring to retaliate against Towns is not an isolated incident but rather part of a broader culture of brutality, indifference, and retaliation against inmates who file grievances.  This is so because inmate Gregory Turley was assigned to the exact same cell in which Towns had been housed prior to Towns being sent to segregation.   This same group of correctional officer used intimidation, threats, and brutality in conspiracy to retaliate against Turley for the filing of grievances and lawsuits before ultimately conspiring to frame Turley with a false disciplinary report in the same fashion used to frame Towns.   See affidavit of Gregory Turley, attached to Exhibit #(13)

**RESPONSE: Defendants deny conspiring to retaliate against Plaintiff or Inmate Turley. Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's remaining allegations in this paragraph.**

46.     As such, the chronology, sequence, and timing of these events which culminated in Towns being written a false disciplinary report by C/O Lindsey in conjunction with the totality of the facts and circumstances surrounding the actions of C/O Maue, C/O Deathrow, Sgt. Roy, C/O Chandler, C/O Todaro, and C/O Lindsey supports Towns' claim that these correctional officers conspired to frame Towns with a false disciplinary report in retaliation for the filing of grievances, specifically where the totality of facts and circumstances clearly demonstrate that not only did each of these correctional officers act in concert but were motivated by a common denominator as evidenced by their own admissions. ExH. #(1-4, 7-9).   Furthermore, Towns would submit that Sgt. Roy's involvement in these events were just as instrumental in the outcome as any other correctional officer in that Sgt. Roy is the superior to all other correctional officers alleged to have conspired to send Towns to segregation.   As such, Sgt. Roy's threats to send Towns to segregation in the event Towns complained again actually set the tone amongst the subordinates of Sgt. Roy as to what was not only acceptable conduct concerning Towns but what was expected of these subordinates in the event Towns failed to take head and continue to complain.   Thus, where Sgt. Roy and C/O Maue openly threaten to send Towns to segregation for complaining.   The facts bear out that Towns was sent to segregation for complaining behind a false disciplinary report written by C/O Lindsey with the exclamation point being that the disciplinary report was co-signed by C/O Maue. (ExH #(11)

**RESPONSE: Defendants deny conspiring to retaliate against Plaintiff. Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's remaining allegations in this paragraph.**

**Claim III**

**Conspiracy To Retaliate Through The Adjustment Committee For Filing Grievances**

47.     Upon being placed in segregation on November 11, 2011, Towns appeared before the adjustment Committee *5 sometime thereafter. (ExH #(1).

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's remaining allegations in this paragraph.**

48.     Towns contends that the facts and circumstances surrounding the composition of the adjustment committee supports a claim by Towns that adjustment committee members conspired in cahoots with C/O Todaro, C/O Lindsey, C/O Maue, Sgt. Roy to punish Towns with the maximum sentence allowed and beyond the maximum sentence allowed as a means to be vindictive behind Towns filing grievances.

**RESPONSE: Defendants deny conspiring to retaliate against Plaintiff. Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's remaining allegations in this paragraph.**

49.     The facts are such that prior to Towns being removed from the general population division to the segregation housing unit (North II), C/O Todaro telephoned ahead to North II Personnel who were informed by C/O Todaro that "I got one coming to you," he said "But I need to talk to you about this one." (ExH #(1)

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in this paragraph.**

50.     Upon appearing before the adjustment committee, Towns discovered that the adjustment committee was composed of Lt. Mifflin, C/O Rebecca Cowan, and C/O Brandon Anthony.   The problem is that C/O Cowan and C/O Anthony *6 2 were defendants in an active lawsuit *7 Towns had pending against numerous correctional officials at the time.   Towns contends that the adjustment committee was stacked against Towns by Committee members predisposed to be bias against Towns by virtue of being sued by Towns.

**RESPONSE: Defendant Mifflin denies his actions as a part of the adjustment committee were in any way motivated by a retaliatory purpose. Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's remaining allegations in this paragraph.**

51.     This despite the fact that Cowan did interview witnesses presented by Towns. (ExH #(1); FN #(5), pg (48). Here, Towns contends that Cowan's involvement with having interviewed witnesses presented by Towns was merely a pretext to give the appearance of impartiality.   At the hearing, Towns asserted a not guilty plea and claimed that C/O Lindsey conspired to frame Towns in retaliation for filing grievances. (ExH #(1). Furthermore, Towns presented the grievances to the adjustment committee which Towns claim triggered the retaliation. (ExH #(1)   This evidence was ignored. (ExH #(1).

---

*6 At the time, Brandon Anthony had been dismissed as a defendant.   However, the lawsuit remained subject to final disposition and appeal.

*7 See previous lawsuit information contained herein at Paragraph (5), pg. (4)

Additionally, inmates John Lee and Gill Maukeese testified that the disciplinary report written by C/O Lindsey and cosigned by C/O Maue was a false charge. (ExH #(1), FN # (5), pg (48). Despite these facts supporting motive for conspiratorial retaliation and evidence attesting to the charges being false, Towns was found guilty. (ExH #(1), FN #(5) pg (48).

**RESPONSE: Defendant Mifflin denies his actions were in any way motivated by a retaliatory purpose. Defendant Mifflin denies there was not sufficient evidence to find Plaintiff guilty of the offenses of insolence or intimidation or threats. Defendants deny conspiring to retaliate against Plaintiff. Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's remaining allegations in this paragraph.**

52.　　Consequently, Towns was sentenced to serve six months in segregation, (6) months of C-grade, (6) months of commissary restriction, and (3) months of yard restriction which was highly questionable and improper in that the incident was not yard related concerning the disciplinary report written by C/O Lindsey. (ExH #(11).　This sentence was not only excessive but intended to be as harsh as possible even though Towns had not received a disciplinary report in two years prior to the disciplinary report in two years prior to the disciplinary report written by C/O Lindsey (ExH #(1).

**RESPONSE: Defendant Mifflin denies the sentence was excessive. Defendants deny their actions were in any way motivated by a retaliatory purpose. Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's remaining allegations in this paragraph.**

53.     Moreover, and to this point, Towns submits that Turley who was also placed in segregation by the same group who were responsible for having placed Towns in segregation only received 3 months in segregation by the adjustment committee for the exact same infraction that garnered Towns 6 months.   See, affidavit of Gregory Turley attached to Exhibit #(14). Towns contends that nothing could be more indicative of a conspiracy than where Towns who was framed with a disciplinary report and arranged to have the disciplinary report decided at the adjustment committee by correctional officers in C/O Cowan and C/O Anthony who were being sued by Towns.

**RESPONSE: Defendants deny their actions were in any way motivated by a retaliatory purpose. Defendant Mifflin denies there was insufficient evidence to find Plaintiff guilty of the offenses of insolence or intimidation or threats. Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's remaining allegations in this paragraph.**

### Grievance

54.     On December 18, 2011, Towns filed a grievance concerning the conspiracy to retaliate against Towns for the filing of grievances.   The grievance implicated each of the defendants named herein. (ExH. #(9)   On January 3, 2012, the grievance office denied the grievance (ExH. #(9) Towns appealed to the Administrative Review Board, the Administrative Review Board responded to Towns' appeal on July 17, 2012.   (ExH #(10). As such, Towns has exhausted administrative remedies concerning the grievance of December 18, 2011. (ExH #(10)

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's remaining allegations in this paragraph.**

### Legal Claim Count I

55.     All named Defendants, their acts, practices and omissions involving official misconduct were taken against Towns knowingly, willfully, arbitrarily and intentionally in conspiring by expressed said implied consent in bad faith to retaliate against Towns for the filing of grievances in total disregard for the First and Fourteenth Amendment to the United States Constitution.

**RESPONSE: Defendants deny the allegations in this paragraph.**

### Legal Claim Count II

56.     All named defendants' acts and omissions deprived Towns of rights guaranteed under Article 1, Section(s) 2 and 5 of the Illinois Constitution.

**RESPONSE: Defendants deny the allegations in this paragraph.**

### Legal Claim Count III

57.     All named defendants' acts and omissions deprived Towns of rights provided for under state law.

**RESPONSE: Defendants deny the allegations in this paragraph.**

### Legal Claim Count IV

58.     All named defendants' acts and omissions deprived Towns of rights provided for under Illinois Department of Corrections Rules.

**RESPONSE: Pursuant to the Court's January 13, 2014 Merit Review, this claim has been dismissed. (Doc. 7 at 12).**

## JURY DEMANDED

Defendants demand a trial by jury in this matter.

## RELIEF REQUESTED

Defendants deny that Plaintiff is entitled to declaratory relief.

Defendants deny that Plaintiff is entitled to injunctive relief.

Defendants deny that Plaintiff is entitled to relief in the form of compensatory damages.

Defendants deny that Plaintiff is entitled to relief in the form of punitive damages.

Defendants deny that Plaintiff is entitled to relief in the form of attorney's fees and costs.

Defendants deny that Plaintiff is entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

### 1. Qualified Immunity

At all times relevant herein, Defendants acted in good faith in the performance of their official duties and without violating Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known. Defendants are therefore protected from suit by the doctrine of qualified immunity.

### 2. Prison Litigation Reform Act § 3626

The injunctive relief Plaintiff requests would violate § 3626 of the Prison Litigation Reform Act (18 U.S.C. § 3626).

### 3. Sovereign Immunity

To the extent Plaintiff is suing Defendants, for injunctive relief not intended to

address ongoing violations, his claim is barred by the Eleventh Amendment and sovereign immunity.

### 4. Heck v. Humphrey

To the extent Plaintiff's allegations require the invalidity of any discipline that resulted in the loss of good time credit, these allegations are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

### 5. Statute of Limitations

To the extent that Plaintiff's claims are barred by the statute of limitations, they should be dismissed.

Wherefore, for the above and foregoing reasons, Defendants respectfully request that this honorable Court deny Plaintiff's requested relief.

Respectfully submitted,

TERRI DETHROW and MICHAEL MIFFLIN,

Defendants,

Ashley B. Carter, #6308718
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62706
Telephone: (217) 782-9026
Facsimile: (217) 524-5091
Email: acarter@atg.state.il.us
Of Counsel.

LISA MADIGAN, Attorney General,
State of Illinois,

Attorney for Defendants,

By: s/Ashley B. Carter
    Ashley B. Carter
    Assistant Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

SHERRELL TOWNS, #B20513,        )
                                )
            Plaintiff,          )
                                )
      -vs-                      )        No. 13-1269
                                )
C/O DEATHROW, et al.,           )
                                )
            Defendants.         )

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2014, I electronically filed the foregoing *Answer and Affirmative Defenses* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

None

and I hereby certify that on July 15, 2014, I mailed by United States Postal Service, the document to the following non-registered participant:

Sherrell C. Towns, # B-20513
Menard Correctional Center
711 Kaskaskia Street
PO Box 1000
Menard, IL 62259

Respectfully submitted,

s/Ashley B. Carter
Ashley B. Carter, #6308718
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62706
Telephone:   (217) 782-9026
Facsimile:   (217) 524-5091
Email: acarter@atg.state.il.us